<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NORCOM RESEARCH, LLC, | : | |
| | : | **Civil Action No. 20-12592 (SRC)** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| NET2PHONE GLOBAL SERVICES, LLC, | : | |
| | : | |
| Defendant. | : | |

**CHESLER**, <u>District Judge</u>

      This matter comes before the Court upon Defendant Net2Phone Global Services' ("N2P" or "Defendant") motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Norcom Research ("Norcom" or "Plaintiff") has opposed the motion. The Court, having considered the papers filed by the parties, proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the Court will deny Defendant's motion as to Count 1; the Court will deny in part and grant in part Defendant's motion as to Count 2; and the Court will grant Defendant's motion as to Counts 3, 4, 5, and 6 of the Complaint.

I.     **BACKGROUND**[1]

This case primarily revolves around a contract dispute. Plaintiff Norcom sells telephone, energy, and electricity services, and also recruits other companies to sell those types of services to other parties. In particular, the way this recruiting process works is that Norcom recruits master agents or independent sales companies ("ISCs"), and then those master agents/ISCs, which employ many subagents, solicit other companies to purchase these types of services. Defendant N2P is also a seller of telephonic and other related services, and in June of 2015, Norcom and N2P entered into a contract, titled the Independent Sales Agreement ("the Agreement"), through which the parties agreed that Norcom would become both an approved seller of N2P products and an approved agent to recruit master agents/ISCs for N2P, as well as individual contacts that might be interested in N2P's products or services. Under the Agreement, if the contacts or ISCs that Norcom recruited led to sales for N2P, Norcom would then receive a commission based on a percentage of the net revenue generated by those sales. However, with respect to the referral of ISCs, the Agreement also specified that "[t]he referral fee that [Norcom] shall receive in connection with the referral of such ISC to N2P . . . shall be memorialized in a separate signing writing which shall be added to this Agreement as an Exhibit." Independent Sales Agreement, Sec. 1.3.

The Agreement also included a limitations of damages clause, which stated in all caps, that:

> In no event shall N2P be liable to [Norcom] or any third party for any indirect, incidental, consequential, exemplary, punitive, reliance or special damages, arising in any manner from this agreement and the performance or non-performance of any obligations

---

[1] The background sets forth facts alleged in the Second Amended Complaint and contained in documents attached to or referenced in this Complaint. The facts are taken as true for purposes of this motion to dismiss only.

> hereunder. Regardless of whether any claim is based in contract, tort, or other legal theory, N2P's liability under or in connection with this agreement shall be limited to ten thousand ($10,000) dollars. The parties acknowledge that the limitations on liability set out in this clause have been negotiated between the parties and are regarded by the parties as being reasonable in all circumstances.

Independent Sales Agreement, Sec. 6.2. Finally, the Agreement also included a merger provision, which stated that:

> This agreement, including any exhibits attached hereto, sets forth the entire agreement and understanding of the parties hereto and supersedes and merges any and all prior proposals, negotiations, representations, agreements, arrangements or understandings, both oral and written, relating to the subject matter hereof. The parties hereto have not relied on any proposal, negotiation or representation, whether written or oral, that is not expressly set forth herein.

Independent Sales Agreement, Sec. 6.13.

Throughout 2015, the parties signed four amendments to the Agreement, which, in total, identified twenty-five ISCs for which Norcom was potentially eligible for commissions. However, according to Norcom's allegations, it referred additional ISCs which N2P refused to execute amendments for, therefore preventing Norcom from collecting commissions for those referrals. Further, on August 15, 2016, N2P terminated the Agreement, and to date, Norcom has not received any commission payments from N2P, as N2P has asserted that none of the master agents/ISCs that Norcom referred resulted in any net revenue earned by N2P. Subsequently, on September 11, 2020, Norcom brought suit against N2P. After being allowed to amend its complaint on two occasions, Plaintiff's Second Amended Complaint ("the Complaint") asserts six counts against N2P: (1) a cause of action under the New Jersey Sales Representatives' Rights Act; (2) breach of contract; (3) fraud; (4) breach of the duty of good faith and fair dealing; (5) unjust enrichment; and (6) unconscionability permitting contract recission. N2P then brought this motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. DISCUSSION

### A. Legal Standard

Defendant seeks dismissal of the Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). While both parties agree that, under the Agreement's choice of law provision, New Jersey substantive law applies to this motion, the Federal Rules of Civil Procedure govern any procedural aspects of the motion. See Erie R. Co. v. Tompkins, 304 U.S. 64, 91-92 (1938) (explaining the general precept that, while federal courts operating under diversity jurisdiction apply state substantive law, federal courts always apply their own rules of procedure).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this pleading standard and avoid dismissal under Rule 12(b)(6), the Supreme Court has explained that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint will meet this plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the complaint need not demonstrate that a defendant is probably liable for the wrongdoing to meet the requisite pleading standard, allegations that give rise to the mere possibility of unlawful conduct are insufficient to withstand a motion to dismiss. Id.; Twombly, 550 U.S. at 557. Further, while a complaint is not required to include highly "detailed factual allegations," it must include more than mere "labels and conclusions." Twombly, 550 U.S. at 555.  Indeed, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

Moreover, while a somewhat general claim for relief may survive the Twombly and Iqbal pleading standard, when a complaint alleges fraud, Federal Rule of Civil Procedure 9(b) imposes an even stricter pleading standard – that is, that the party alleging fraud "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). The Third Circuit has explained that, to meet this particularity standard, the complaint must be detailed enough that it "place[s] the defendant on notice of the 'precise misconduct with which [he is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (quoting Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004), abrogated on other grounds by Twombly, 550 U.S. 544 (2007)).

Finally, in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." Id. at 322. Being that the Complaint alleges six distinct causes of action, the Court will examine each of these claims separately to determine which counts, if any, meet the pleading standards necessary to survive this motion.

### B. Count 1: Cause of Action Under the New Jersey Sales Representatives' Rights Act

Beginning with the first count in the Complaint, this count alleges that, by failing to pay Norcom any commissions, N2P has violated the New Jersey Sales Representatives' Rights Act. Under this statute, "[w]hen a contract between a principal and a sales representative to solicit orders is terminated, the commissions and other compensation earned as a result of the representative relationship and unpaid shall become due and payable within 30 days of the date the contract is terminated or within 30 days of the date commissions are due, whichever is later."

5

N.J.S.A. 2A:61A-2. Further, this statute creates a private cause of action for sales representatives, as it states that "[a] principal who violates or fails to comply with the provisions of section 2 of this act shall be liable to the sales representative for all amounts due the sales representative," as well as treble damages, attorney's fees, and court costs. N.J.S.A. 2A:61A-3. Finally, this statute also voids any "provision in any contract between a sales representative and a principal purporting to waive any provision of this act, whether by express waiver or by a provision stipulating that the contract is subject to the laws of another state . . ." N.J.S.A. 2A:61A-6.

Defendant claims that this New Jersey statute does not apply to this matter, as Plaintiff is not a citizen of New Jersey and did not solicit any sales from within New Jersey. To determine the veracity of this argument, the Court must first analyze how this statute should be understood. Under New Jersey rules of statutory construction, to properly give effect to the legislative intent behind a statute, a court must first "start with the plain language of the statute. If it clearly reveals the Legislature's intent, the inquiry is over." State v. Harper, 229 N.J. 228, 237 (N.J. 2017). Then, only "[i]f a law is ambiguous, [courts] may consider extrinsic sources including legislative history. [Courts] also look to extrinsic aids if a literal reading of the law would lead to absurd results." Id. (internal citations omitted).

Here, Defendant claims that the statute requires that a sales representative has a connection to New Jersey. As support for this conclusion, Defendant attempts to compare the section of the statute that creates this cause of action with other provisions within the statute. In particular, while the above provisions make no mention of a requirement that a sales representative must have some connection to the state to be able to utilize this cause of action, some other provisions of the statute do mention geography. For example, in N.J.S.A. 2A:61A-

1(b)'s definition of a principal, it explains that this includes "a person who does not have a permanent or fixed place of business in this State." N.J.S.A. 2A:61A-1(b). Therefore, Defendant avers that because this is not also mentioned in the definition of a sales representative, that must mean that, under the statute, sales representatives must have a place of business in New Jersey. Further, Defendant also points to N.J.S.A 2A:61A-5, which states that "[a] principal who is not a resident of this State who contracts with a sales representative to solicit orders *in this State* is declared to be doing business in this State for purposes of the exercise of personal jurisdiction." N.J.S.A 2A:61A-5 (emphasis added). Nevertheless, neither of these provisions show that the legislature's intent was to limit the statute's reach to only sales representatives that have a place of business in New Jersey. Rather, the legislature's goal seems to have been to set a minimum floor for what establishes enough of a connection to New Jersey to allow for the use of this cause of action – that is, either that the principal has a connection to New Jersey itself, or if not, that the sales representative has solicited orders for the principal within New Jersey.

     Here, because Defendant, the principal, does have a connection to New Jersey itself, as it has a place of business in New Jersey, it is irrelevant whether Plaintiff has solicited sales in the state as well. Further, it is not as if this matter lacks any actual connection to New Jersey. Indeed, in addition to the Defendant being based in New Jersey, the Complaint also alleges that all of Defendant's members are New Jersey citizens. Further, the Agreement also states that New Jersey law applies. As such, to allow Defendant to benefit from the use of New Jersey law, but then to prevent Plaintiff from benefiting from a New Jersey cause of action, would be illogical. Moreover, Defendant has not pointed to any cases that adopt its own reading of the statute. As such, the statute on its face does not prevent out-of-state sales representatives, like Norcom, from applying the cause of action against in-state principals, and because the statute is not ambiguous

in this regard, it must be accepted at face value without turning to the legislative history or other extrinsic sources.[2] Therefore, Count 1 of the Complaint is upheld as properly asserting a cause of action.

### C. Count 2: Breach of Contract

Moving on to Count 2 in the Complaint, this claim alleges breach of contract. Under New Jersey law, "[t]o state a claim for breach of contract, [the plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico, 507 F.3d at 203. However, it goes without saying that a party cannot plausibly assert a contract claim that conflicts with the express terms of a valid contract.

As part of N2P's motion to dismiss, it does not allege that Plaintiff's entire breach of contract claim must fail under Rule 12(b)(6); rather, it merely asserts that this claim must be limited by two explicit limitations in the Agreement.  First, N2P avers that the Court should dismiss any of Norcom's contract claims that assert that it is owed commissions for referring master agents/ISCs that are not listed in any of the amendments to the Agreement. As the basis for this conclusion, N2P points to an express provision in the Agreement, which provides that "[t]he referral fee that [Norcom] shall receive in connection with the referral of such ISC to N2P . . . shall be memorialized in a separate signing writing which shall be added to this Agreement as an Exhibit." Independent Sales Agreement, Sec. 1.3. As such, the Agreement plainly makes it clear that Norcom could only receive commissions for referring an ISC if the parties later entered

---

[2] Plaintiff also argues in his opposing papers that even if the Court were to adopt Defendant's interpretation of the statute, Plaintiff can still utilize this cause of action because Plaintiff's commissions came from sales that did occur in New Jersey, as "it is the sale of New Jersey-based N2P's services that generate the commissions." See Pl.'s Opp'n Br. at 10. While this is a colorable argument, the Court will not reach this issue because it has already ruled that Defendant's reading of the statute does not apply.

into a signing amendment regarding that specific ISC. Further, it is apparent that Norcom understood that this was the necessary process for receiving commissions for referring ISCs to N2P, as the parties have entered into four such amendments before, which allowed Norcom to potentially collect commissions for twenty-five different ISCS. Moreover, the reasoning behind this contract provision is clear and understandable – as this provision protects N2P from having to potentially pay two different recruiters for the referral of the same ISC. As such, to the extent that Plaintiff's breach of contract claim asserts that it is due commissions for ISCs not listed in any of the amendments to the Agreement, it must be dismissed. However, Plaintiff's breach of contract claim is upheld to the extent that it asserts that Plaintiff is owed commissions that are within the purview of the Agreement and/or its amendments.

Second, N2P has also argued that this claim must be limited to ten thousand dollars in damages, as a provision in the Agreement clearly states that "[r]egardless of whether any claim is based in contract, tort, or other legal theory, N2P's liability under or in connection with this agreement shall be limited to ten thousand ($10,000) dollars." Independent Sales Agreement, Sec. 6.2. While this is also an explicit contract provision, the Court cannot determine at this time whether this provision is applicable. More specifically, as explained previously, under the New Jersey Sales Representatives' Rights Act, any "provision in any contract between a sales representative and a principal purporting to waive any provision of this act . . . shall be void. " N.J.S.A. 2A:61A-6. As such, because, on its face, the limitation of damages clause in the Agreement appears to limit the state statute's reach, as the state statute does not limit damages and even allows for treble damages, attorney's fees, and court costs, there is a possibility that, under New Jersey law, this provision should be considered void. However, because this issue has not been fully briefed by the parties at this time, the Court will not presently determine whether

Plaintiff's claim under this New Jersey statute voids the limitation of damages clause. Thus, given the fact that the state statutory claim is not being dismissed at this stage, and since it may indeed bar application of the limitation of damages clause, it is premature for the Court to determine whether this provision is applicable and enforceable. Therefore, at this time, the Court will not dismiss Plaintiff's claim to the extent that it requests damages in excess of the limitation of damages provision.

### D. Count 3: Fraud

In the third count of the Complaint, Plaintiff alleges fraud. More specifically, this count alleges that N2P committed multiple frauds, including fraud in the inducement, ongoing fraud, fraud in the failure to pay, and fraud regarding misrepresentation. Being that this count asserts fraud, Rule 9(b)'s stringent pleading standard applies – meaning that, to avoid dismissal, Plaintiff "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). However, all of Plaintiff's fraud-related claims cannot succeed, as Plaintiff has not alleged with particularity any facts that show that it was defrauded. Indeed, as the basis for these fraud claims, Plaintiff only points to extra-contractual representations that conflict with the fully integrated written contract, and New Jersey law bars reliance on any such representations.

Under the New Jersey parol evidence rule, "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." Filmlife, Inc. v. Mal "Z" Ena, Inc., 251 N.J. Super. 570, 573 (N.J. Super. Ct. App. Div. 1991) (quoting 3 *Corbin on Contracts* § 573 (1960)). And while extrinsic evidence may be used to

prove certain types of fraud, this exception cannot be utilized when the matter at issue is "expressly addressed in the integrated writing . . ." Id. at 574.

Here, the Agreement is a fully integrated contract, as it contains a merger clause that makes it clear that the parties did not rely on anything other than the written document. As the Agreement states:

> This Agreement, including any exhibits attached hereto, sets forth the entire agreement and understanding of the parties hereto and supersedes and merges any and all prior proposals, negotiations, representations, agreements, arrangements or understandings, both oral and written, relating to the subject matter hereof. The parties hereto have not relied on any proposal, negotiation or representation, whether written or oral, that is not expressly set forth herein.

Independent Sales Agreement, Sec. 6.13. Further, Plaintiff's claims of fraud are all expressly addressed in the Agreement. For example, Plaintiff alleges that it was told that it would receive additional commissions in excess of what was promised in the Agreement; however, the Agreement plainly states what commissions Plaintiff would receive. Further, Plaintiff also alleges that it was told that the limitation of liability clause would not apply, but this issue, of course, also falls squarely within the Agreement. As such, because the Agreement is a fully integrated document, and because these claims of fraud all focus on matters that are expressly addressed within the Agreement, this Count must be dismissed.

### E.  Count 4: Breach of the Duty of Good Faith and Fair Dealing

In the fourth count of the Complaint, Plaintiff alleges that N2P breached the duty of good faith and fair dealing. "An implied covenant of good faith and fair dealing is present in all contracts governed by New Jersey law." Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 169-170 (3d Cir. 2001). "This obligation to perform contracts in good faith has been interpreted in New Jersey to mean that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Id. at

11

170 (quoting <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 148 N.J. 396, 420 (N.J. 1997)). However, "the implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." <u>Fleming Cos. v. Thriftway Medford Lakes, Inc.</u>, 913 F. Supp. 837, 846 (D.N.J. 1995).

Here, Plaintiff asserts that N2P breached this implied covenant by terminating the Agreement and by not including certain ISCs in amendments to the Agreement. However, allowing Plaintiff to bring this claim would go against the rule that the implied covenant cannot be used to alter the clear terms of an agreement. First, the Agreement plainly states in Section 3.1 that the contract term was for one year and that it would afterward automatically renew, but only on a month-to-month basis. The Agreement also states that these automatic renewals would cease if the contract was terminated by either party with thirty-days written notice. Being that the Agreement was first entered into on June 2, 2015, and then terminated on August 5, 2016, the initial contract term of one year already ended before N2P terminated the contract. As such, under the terms of the Agreement, N2P was within its rights in terminating the Agreement.

Second, as previously explained, Section 1.3 of the Agreement makes it clear that Plaintiff was only eligible to receive commissions for referring an ISC if the parties later entered into an amendment about that ISC. Further, while "New Jersey law also holds that a party to a contract can breach the implied duty of good faith even if that party abides by the express and unambiguous terms of that contract if that party 'acts in bad faith or engages in some other form of inequitable conduct[,]'" there is no indication here that N2P acted in bad faith. <u>Emerson</u>, 253 F.3d at 170 (quoting <u>Black Horse Lane Assoc. v. Dow Chem. Corp.</u>, 228 F.3d 275, 288 (3d Cir. 2000)). Rather, N2P has previously demonstrated its willingness to act in good faith by entering

12

into four amendments to the Agreement which allowed Plaintiff to be eligible for commissions from twenty-five different ISCs. Therefore, because Plaintiff's claim that Defendant breached this implied covenant would effectively change the clear terms of the Agreement, and since Plaintiff has not alleged any facts supporting a plausible inference that Defendant acted with bad faith, this Count must be dismissed.

### F. Count 5: Unjust Enrichment

As for the fifth count in the Complaint, this asserts unjust enrichment as an alternative cause of action. "To establish unjust enrichment [under New Jersey law], a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (N.J. 1994). Further, the plaintiff must "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id. Known as "quasi contract," the equitable remedy of unjust enrichment can be used only when there "is not a contract at all, [i.e., where] there is no actual manifestation of assent." Wanaque Borough Sewerage Auth. v. Twp. of W. Milford, 144 N.J. 564, 574 (N.J. 1996). As such, quasi-contract causes of action, like Plaintiff's unjust enrichment claim, are not available where an adequate remedy exists at law. Duffy v. Charles Schwab & Co., 123 F. Supp. 2d 802, 814 (D.N.J. 2000). More specifically, an adequate remedy at law exists if a valid contract governs the rights of the parties. Van Orman v. Am. Ins. Co., 680 F.2d 301, 310 (3d Cir. 1982). Therefore, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." Id. See also Duffy, 123 F. Supp. 2d at 814 ("Therefore, recovery based on a quasi-contract theory is mutually exclusive of a recovery based on a contract theory."). As will be discussed in greater detail below, Plaintiff's claim for contract recission

13

cannot succeed; thus, because a valid unrescinded contract governs the parties' dispute, Plaintiff's quasi-contract claim for unjust enrichment must be dismissed.

Moreover, while courts will sometimes allow parties to plead quasi-contract claims in the alternative, in addition to a breach of contract claim, that is only the case when it is questionable whether the contract is even enforceable in the first place. See, e.g., Logical Design Sols., Inc. v. CVS Pharmacy, Inc., Civ. Action 20-12077 (SRC), 2021 WL 926614, at *5 (D.N.J. March 11, 2021) (explaining that it is permissible to plead breach of contract and unjust enrichment as alternative theories where the plaintiff challenges the validity of the contract, but not where a valid and enforceable contract governs). Here, there is no doubt that a valid and enforceable contract, the Agreement, applies. Therefore, an unjust enrichment claim cannot be pled in the alternative and must be dismissed.

### G.  Count 6: Unconscionability Permitting Contract Recission

Finally, the sixth count of the Complaint alleges unconscionability permitting contract recission. More specifically, this count asserts that the limitation of liability clause in the Agreement is unconscionable, and therefore that the equitable remedy of recission is required. In determining whether a contract is unconscionable under New Jersey law, courts generally "look for two factors: (1) unfairness in the formation of the contract, and (2) excessively disproportionate terms." Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564 (N.J. Super. Ct. Ch. Div. 2002).

> The first factor—procedural unconscionability—can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process. The second factor—substantive unconscionability—simply suggests the exchange of obligations so one-sided as to shock the court's conscience.

14

Id. at 564-65 (internal citations omitted). However, "'[t]he intent of the [concept of unconscionability] is not to erase the doctrine of freedom of contract, but to make realistic the assumption of the law that the agreement has resulted from real bargaining between parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion.'" Id. at 566 (quoting Kugler v. Romain, 58 N.J. 522, 544 (N.J. 1971)). As such, "[t]o survive a 12(b)(6) motion, [a plaintiff] must plausibly demonstrate 'some overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms.'" Donnelly v. Option One Mortg. Corp., No. 11-cv-7019, 2012 WL 4490642, at *7 (D.N.J. Sept. 26, 2012) (quoting Howard v. Diolosa, 241 N.J. Super. 222, 230 (N.J. Super. Ct. App. Div. 1990)).

      Here, Plaintiff's unconscionability claim must fail – as it has not properly demonstrated procedural unconscionability nor substantive unconscionability. Nothing in the Complaint plausibly suggests that the parties' bargaining powers were unequal, and the terms of the Agreement itself are not excessively disproportionate. Focusing first on the procedural aspect, while Plaintiff is not a lawyer and did not consult a lawyer before entering into the Agreement, he is a professional in this industry and has likely entered into many such contracts before. As the Complaint states, Steve Boggs, the sole member and employee of Plaintiff Norcom, "has worked hard to develop [Norcom's] reputation as knowledgeable in the area of consulting with energy and telecommunication companies and assisting them in expanding their revenue by linking their business with high grossing and hardworking partners." Am. Compl. ¶ 23. The Complaint then goes on to explain that "Mr. Boggs has developed a significant amount of expertise in delivering customers and ISCs to telecommunications companies . . . ." Am. Compl.

15

¶ 23. As such, there is no indication that Plaintiff is an unsophisticated party that could not understand the contract terms. Further, there were no hidden or unduly complex contract terms – as the Agreement was only six pages long, and the limitation of liability clause was written in all capital letters, making it easy to notice.

Then, as for substantive unconscionability, while the limitation of liability clause does affect the extent to which Plaintiff may be able to recover damages, it is certainly not "so one-sided as to shock the court's conscience," nor patently unfair. Sitogum Holdings, 352 N.J. Super. at 565. Rather, "[e]xculpatory clauses like . . . one[s] [that limit damages] are valid where they do not adversely affect the public interest, where the exculpated party is not under a public duty to perform, as in the case of a public utility or common carrier, and where the contract does not grow out of unequal bargaining power or is otherwise unconscionable." Tessler & Son, Inc. v. Sonitrol Sec. Sys. of N. N.J Inc., 203 N.J. Super. 477, 482-83 (N.J. Super. Ct. App. Div. 1985). See also Prof'l Cleaning & Innovative Bldg. Serv., Inc. v. Kennedy Funding, Inc., No. 06-CV-2384, 2005 WL 1924344, at *2 (D.N.J. Aug. 11, 2005) ("In New Jersey, contractual limitations of liability have traditionally been upheld so long as they do not violate public policy."). Here, enforcing a standard limitation of liability clause would not be against public policy and thus is not unconscionable. However, as previously explained, the Court will not determine at this time whether the clause is actually enforceable in this context – as there is a possibility that the New Jersey statutory cause of action voids this provision. Nevertheless, because the contract is neither procedurally unconscionable nor substantively unconscionable, this count must be dismissed, and contract recission will not be allowed.

### H. Whether Plaintiff Should Be Granted Further Leave to Amend

Lastly, because there is no indication that allowing Plaintiff to amend its pleadings further would cure any of the deficiencies in the Complaint, and because Plaintiff has not proffered any information to the contrary, leave to further amend will not be granted. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court need not grant the plaintiff leave to amend if amendment of the complaint would be inequitable or futile). As such, any claims that are dismissed will be dismissed with prejudice.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion will be granted in part and denied in part. To the extent that any counts are dismissed, they will be dismissed with prejudice. An appropriate Order with be filed together with this Opinion.

                                        s/Stanley R. Chesler
                                        STANLEY R. CHESLER
                                        United States District Judge

Dated: March 26, 2021